**PENNSYLVANIA FEDERATION OF the BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYEES, by its Trustee ad litem Ted DODD; Vincent Bennett, on behalf of himself and all other similarly situated employees,**

v.

**NATIONAL RAILROAD PASSENGER CORPORATION ("AMTRAK")**

**Pennsylvania Federation of the Brotherhood of Maintenance of Way Employees and Vincent Bennett, Appellants.**

No. 92–1577.

United States Court of Appeals, Third Circuit.

Argued Jan. 26, 1993.

Decided March 18, 1993.

---

Joel Myron (argued), Jersey City, NJ, Louis Agre, Philadelphia, PA, for appellants.

Joanna L. Moorhead, Jonathan I. Saperstein (argued), National R.R. Passenger Corp. ("AMTRAK"), Washington, DC, Kenneth D. Kleinman, Kleinbard, Bell & Brecker, Philadelphia, PA, for appellee.

BEFORE: GREENBERG, ROTH, and LEWIS, Circuit Judges.

## OPINION OF THE COURT

GREENBERG, Circuit Judge.

### I. BACKGROUND

Appellants Pennsylvania Federation of the Brotherhood of Maintenance of Way Employees (BMWE) and Vincent Bennett, a member of BMWE, initiated this action pursuant to the Pennsylvania Minimum Wage Act, Pa.Stat.Ann. tit. 43, §§ 333.101 to .115 (1992), against appellee National Railroad Passenger Corporation (AMTRAK) in the Philadelphia County Court of Common Pleas.[1] AMTRAK removed the case to the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1349[2] and 1441. The parties then stipulated to the facts and filed dispositive motions. AMTRAK moved to dismiss the case, arguing that the district court lacked subject matter jurisdiction because this case was a "minor dispute" requiring an interpretation of its collective bargaining agreement with BMWE, and therefore the National Railroad Adjustment Board had exclusive jurisdiction pursuant to the Railway Labor Act. 45 U.S.C. § 153 First (i). By an order entered June 15, 1992, the district court granted AMTRAK's motion to dismiss and denied appellants' motion for summary judgment as moot. Because we agree with the district

---

**1.** We note that the same union unsuccessfully brought a similar action in New Jersey state court against Conrail. *See Brotherhood of Maintenance of Way Employees v. Consolidated Rail Corp.,* Docket L-1902-89 (N.J.Super. Jan. 25, 1991), *aff'd,* No. A-3255-90T5 (N.J.App.Div. Jan. 28, 1992).

**2.** AMTRAK was created by an Act of Congress, and the United States government owns more than 50% of AMTRAK's capital stock.

court's reasoning and result, we will affirm.[3]

BMWE and AMTRAK are parties to a currently effective collective bargaining agreement. BMWE represents, among others, AMTRAK employees who construct and maintain AMTRAK's tracks, bridges, and facilities. According to the collective bargaining agreement, AMTRAK may assign certain workers in its Track and Bridge and Building Department to camp cars[4] or headquarters and transport these workers on AMTRAK vehicles from these bases to job sites and back. Pursuant to Rule 63 of the collective bargaining agreement,[5] AMTRAK pays these employees straight-time pay for travel time falling outside the normal 40–hour work week.[6]

BMWE and Bennett contend that this travel compensation scheme violates Pennsylvania's minimum wage law, Pa.Stat. Ann. tit. 43, § 333.104(c), because it does not provide for overtime pay for the return travel time. Under Pennsylvania law employers are required to pay employees overtime (not less than time and a half) for all hours worked in excess of 40 hours per week. A Pennsylvania regulation, codified at 34 Pa.Code § 231.1, defines "hours worked" as:

all time during which an employe[e] is required by the employer to be on the premises of the employer, to be on duty, or to be at the prescribed work place, all time spent in traveling as part of the duties of the employe[e] during normal working hours, and all time during which an employe[e] is employed or permitted to work; provided, however, that time allowed for meals shall be excluded unless the employe[e] is required or permitted to work during that time, and provided further, that time spent on the premises of the employer for the convenience of the employe[e] shall be excluded.

According to BMWE and Bennett, a simple construction of the Pennsylvania statute and regulation will vindicate their right to overtime pay. Therefore, they did not feel bound to submit their claims to the grievance process outlined in the collective bargaining agreement.

## II. DISCUSSION

In enacting the Railway Labor Act, Congress sought "to promote stability in labor-management relations in this important national industry by providing effective and efficient remedies for the resolution of railroad-employee disputes arising out of the interpretation of collective-bargaining agreements." *Union Pacific R.R. v. Sheehan*, 439 U.S. 89, 94, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978). Accordingly, Congress created the National Railroad Adjustment Board to hear disputes regarding rates of pay, rules, or working conditions. Congress considered it essential to keep so-called "minor disputes" out of the courts and in arbitration. *Id.* Therefore, the

---

3. Inasmuch as we are reviewing an order granting a motion to dismiss, we exercise plenary review. We note, however, that the district court considered the parties' stipulation of facts in granting AMTRAK's motion to dismiss. While this procedure may in effect have converted the motion to dismiss into a motion for summary judgment, this possibility would not change our scope of review. Of course, the parties do not suggest that there were any facts in dispute which required resolution at an evidentiary hearing.

4. Camp cars are railroad cars that have sleeping, eating, and sanitary facilities.

5. Rule 63 provides in pertinent part:
An employe[e] waiting, or traveling by direction of AMTRAK by passenger train, motor car, or any other method of transportation, will be allowed straight time for actual time waiting and/or traveling during or outside of the regularly assigned hours, except:
(a) When employe[e]s regularly assigned to camp cars, travel in such cars, they shall be allowed straight time.

6. An example annexed to Rule 63 demonstrates the application of the agreement. If an employee's normal shift were from 7 a.m. to 4 p.m. (8 hours excluding lunch), and he got on an AMTRAK train to go to the job site at 7 a.m. (arriving at 8 a.m.) and returned to headquarters on an AMTRAK train at 6 p.m. (leaving at 5 p.m.), the collective bargaining agreement would require that the employee be paid 8 hours of straight-time pay for the normal work day, 7 a.m. to 4 p.m.; 1 hour of time-and-half pay for 4 p.m. to 5 p.m.; and 1 hour of straight-time pay for 5 p.m. to 6 p.m. (the time traveling).

Railway Labor Act *requires* submission of minor disputes to arbitration. *Consolidated Rail Corp. v. Railway Labor Executives' Ass'n,* 491 U.S. 299, 303, 109 S.Ct. 2477, 2480, 105 L.Ed.2d 250 (1989); *Andrews v. Louisville & N.R.R.,* 406 U.S. 320, 322, 92 S.Ct. 1562, 1564, 32 L.Ed.2d 95 (1972).

 However, at the same time, Congress in enacting the Railway Labor Act did not intend to preempt states from exercising their police powers to regulate minimum working conditions. *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 757 n. 32, 105 S.Ct. 2380, 2398 n. 32, 85 L.Ed.2d 728 (1985) (citing *Terminal R.R. Ass'n v. Railroad Trainmen,* 318 U.S. 1, 6–7, 63 S.Ct. 420, 423, 87 L.Ed. 571 (1943)). Thus, BMWE and Bennett seek to avoid mandatory arbitration by bringing their claims under state law. Yet, the mere assertion of an independent state-law claim does not enable a party to avoid arbitration, otherwise compelled by the Railway Labor Act, because "if the resolution of [that] state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law ... is pre-empted." *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 405–06, 108 S.Ct. 1877, 1881, 100 L.Ed.2d 410 (1988) (relying on *Local 174, Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962) and *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985)).[7] Aware of this case law, BMWE and Bennett argue that we can resolve this dispute merely by construing Pennsylvania law, particularly the term "hours worked" as defined in 34 Pa.Code § 231.1.

 In the district court, BMWE and Bennett apparently argued that the time spent traveling back to the camp cars or headquarters fell under the "all time spent in traveling as part of the duties of the employe[e] during normal working hours" provision of the Pennsylvania regulation.

However, as the district court correctly noted, it is impossible to determine whether this travel time is "part of the duties of the employe[e]" without interpreting the collective bargaining agreement to see exactly what the duties of the employees are. *Cf. O'Brien v. Consolidated Rail Corp.,* 972 F.2d 1, 5 (1st Cir.1992) (holding that state law antidiscrimination claim was preempted by Railway Labor Act because claim required interpretation of the collective bargaining· agreement to determine whether employee could perform duties of position he was seeking), *cert. denied,* —— U.S. ——, 113 S.Ct. 980, 122 L.Ed.2d 134 (1993). Similarly, as the district court also noted, it is impossible to determine whether the travel is undertaken "during normal working hours" without interpreting the collective bargaining agreement to ascertain the normal working hours.

On appeal, BMWE and Bennett also argue that the first clause of the regulation covers their situation. Yet, once again, in order to determine whether the workers are *"required by the employer* to be on the premises of the employer, to be on duty, or to be at the prescribed work place" during the time spent traveling, we would have to interpret the collective bargaining agreement. For example, a worker living near a job site might be able to go directly home instead of going on an AMTRAK vehicle back to headquarters. Similarly, if a job site were near the place of employment of a worker's spouse, the spouse might be able to pick up the worker on the way home. The only way to determine whether such arrangements would be permissible is to look to the collective bargaining agreement. In other words, only an interpretation of the collective bargaining agreement can tell us if these AMTRAK employees are *required* to travel on the AMTRAK vehicles after their work shifts are done. Thus, contrary to the assertions of BMWE and Bennett, their dispute with AMTRAK

7. We realize that *Lingle* involved a claim of preemption under the Labor Management Relations Act, and not the Railway Labor Act; however, this difference is not significant in our case because if anything preemption is broader under the Railway Labor Act. *See Andrews,* 406 U.S. at 323, 92 S.Ct. at 1565; *Grote v. Trans World Airlines, Inc.,* 905 F.2d 1307, 1309–10 (9th Cir.), *cert. denied,* 498 U.S. 958, 111 S.Ct. 386, 112 L.Ed.2d 397 (1990).

cannot be resolved solely by reference to state law. Rather, resolution of their state-law claims requires that we ascertain the meaning of the collective bargaining agreement. Accordingly, arbitration of the appellants' claims is mandatory, and the courts are without jurisdiction to hear the dispute. In concluding, we stress that our decision does not address the merits of the dispute between BMWE and AMTRAK; rather, it only states which forum can hear the dispute.[8]

The order of June 15, 1992, will be affirmed.

LEWIS, Circuit Judge, concurring.

I join the court's opinion except insofar as its analysis does not expressly distinguish between interpreting or construing a collective bargaining agreement, on the one hand, and merely referring to it on the other, in the context of the appropriateness of Railway Labor Act preemption.

To give meaning to the terms "interpret" or "construe," the court broadens beyond necessity the parameters of RLA preemption. While the court correctly concludes that Rule 63 and other provisions of the collective bargaining agreement must be interpreted to determine what was intended by "part of the duties" of the employee, I do not believe that any construction or interpretation is necessary with regard to the question of whether an employee's travel is undertaken "during normal working hours;" I think that is made abundantly clear by a quick reference to Rule 63. Accordingly, I would have taken the opportunity in this case to clarify that a need merely to refer to the collective bargaining agreement should not necessarily invoke *Lingle v. Norge Division, Magic Chef, Inc.*, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), and invite preemption.

In my view, the distinction is significant. For example, if mere reference were enough to invalidate a state law, then all state minimum labor standards could be rendered invalid as applied to union situations. This, of course, is contrary to established precedent. At a minimum, in fact, the Supreme Court has recognized that an exception to bargaining agreement preemption exists for state minimum labor standards. *See Metropolitan Life Ins. v. Massachusetts*, 471 U.S. 724, 755–56, 105 S.Ct. 2380, 2397–98, 85 L.Ed.2d 728 (1985); *Malone v. White Motor Corp.*, 435 U.S. 497, 98 S.Ct. 1185, 55 L.Ed.2d 443 (1978). Indeed, an employer or union could exempt itself from any state law by including contrary terms in a collective bargaining agreement. Thus, my concern is that the majority's analysis might lend itself to insulating entirely from judicial review the contents of a collective bargaining agreement.

My concerns aside, however, I believe the majority is correct in that resolution of the state-law claim pertaining to the duties of the employee does depend upon the meaning of the collective bargaining agreement and, accordingly, "the application of state law ... is preempted." *Lingle*, 486 U.S. at 405–06, 108 S.Ct. at 1881.

---

**8.** Appellants argue that their claims should be treated separately because BMWE is suing on behalf of its members, while Bennett is suing as an individual. We see no merit to this contention which in any event may not be factually accurate as Bennett has sought to sue as a representative "of himself and all other similarly situated employees." While it is true that the Pennsylvania Wage Payment and Collection Law gives both unions and individual employees the right to institute a suit for wages due, *see* Pa.Stat.Ann. tit. 43, § 260.9a, this fact is not significant because both are bound by the collective bargaining agreement and both could escape the confines of mandatory arbitration only if their state-law claims can be proven without resorting to an interpretation of the collective bargaining agreement.