**DISSENT; Opinion Filed July 5, 2022**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

_____

**No. 05-20-01067-CV**
_____

**SOUTHWEST AIRLINES PILOTS ASSOCIATION (SWAPA) ON BEHALF OF ITSELF AND ITS MEMBERS, Appellant**
**V.**
**THE BOEING COMPANY, Appellee**

**On Appeal from the 160th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-19-16290**

## OPINION DISSENTING FROM DENIAL OF EN BANC RECONSIDERATION

Before the Court sitting En Banc
Opinion by Justice Schenck

This case presents substantial, recurring questions relating to the application of the federal Railway Labor Act to a claim for money damages filed in state court. According to the petition for en banc reconsideration, our panel opinion conflicts with (1) multiple federal appellate courts' reading of that statute to preempt any state law claim requiring interpretation of a collective bargaining agreement; and (2) the well-reasoned decision of the Chief Judge of the Northern District of Texas finding the claims at issue here to require just such an interpretation. Under these circumstances, I believe that a response to the petition for reconsideration is

warranted, at a minimum. In the absence of that response,[1] I agree with the decisions of the federal courts and therefore dissent from this Court's denial of appellant's request.

## I.

In 2016, appellant Southwest Airline Pilots Association ("SWAPA") entered into a collective bargaining agreement ("CBA") with Southwest Airlines, ending a dispute over whether the prior 2006 CBA included appellee The Boeing Company ("Boeing")'s 737 MAX aircraft as a variant of the 737 aircraft enumerated in the CBA. The 2016 CBA provided that SWAPA's members would operate Boeing's 737 MAX aircraft.

Subsequent to several catastrophic crashes involving the 737 MAX aircraft and the resulting grounding of that fleet, SWAPA, on behalf of itself and its members, initiated suit against Boeing, alleging state law claims for fraud, tortious interference with a contract, and negligence. According to SWAPA, Boeing's misrepresentations and omissions regarding the 737 MAX, including withholding critical safety information, caused SWAPA to agree to include in the 2016 CBA that its pilots would fly the 737 MAX. Boeing removed the case to federal court, asserting SWAPA's state-law claims to be completely preempted by the Railway Labor Act ("RLA"), thus supporting federal subject matter jurisdiction. SWAPA

---

[1] Goldstein, J., agrees that a response to this motion is warranted.

filed a motion to remand the claims back to state court, which the federal court granted. In state court, Boeing filed a plea to the jurisdiction, again arguing SWAPA's state-law claims are completely preempted by the RLA, which the trial court granted.[2] This appeal followed.

## II.

Congress' purpose in passing the RLA was to promote stability in labor–management relations by providing a comprehensive framework for resolving labor disputes. *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994); *see also* 45 U.S.C. § 151a. To realize this goal, the RLA establishes a mandatory arbitral mechanism for "the prompt and orderly settlement" of two distinct classes of disputes. *See* 45 U.S.C. § 151a. The first class, those directly concerning "rates of pay, rules or working conditions," are deemed "major" disputes. *See Norris*, 512 U.S. at 252. Major disputes relate to "'the formation of collective [bargaining] agreements or efforts to secure them.'" *See id.* (quoting *Elgin, J. & E.R. Co. v. Burley*, 325 U.S. 711, 723 (1945)). The second class of disputes, known as "minor" disputes, "gro[w] out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." *See id*. at 252–53

---

[2] Federal preemption is not just a matter of federal subject matter jurisdiction, but is also properly brought as a plea to the jurisdiction because the issue here is one of forum preemption rather than "choice of law" preemption. *See Gorman v. Life Ins. Co. of N. Am.*, 811 S.W.2d 542, 545–46 (Tex. 1991) (distinguishing between forum preemption, which implicates court's subject matter jurisdiction, and "choice of law" preemption, which instead operates as affirmative defense and does not impact subject matter jurisdiction).

(quoting 45 U.S.C. § 151a). These disputes involve "controversies over the meaning of an existing collective bargaining agreement in a particular fact situation." *See id.* at 253 (quoting *Trainmen v. Chi. R. & I.R. Co.*, 353 U.S. 30, 33 (1957)). Thus, "major disputes seek to create contractual rights, minor disputes to enforce them." *See id.* (quoting *Consol. Rail Corp. v. Ry. Labor Execs.' Ass'n*, 491 U.S. 299, 302 (1989)).

Federal precedent requires preemption of state-law claims where resolution of those claims depends on an interpretation of a CBA.[3] *See id.* at 261; *see also Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405 (1988); *Wis. Cent., Ltd. v. Shannon*, 529 F.3d 751, 757 (7th Cir. 2008); *Baylis v. Marriott Corp.*, 906 F.2d 874, 877 (2d Cir. 1990) ("Since plaintiffs cannot establish that Marriott tortiously induced Pan Am to breach without establishing the meaning of the collective bargaining agreement and its breach by Pan Am, their claims of tortious inducement of breach are preempted by the RLA."). The general purposes of the RLA include "to provide for the prompt and orderly settlement of all disputes growing out of . . . the interpretation or application of agreements covering rates of pay, rules, or working conditions." *See* 45 U.S.C. § 151a. Indeed, the Supreme Court looked to this section

---

[3] This form of defensive, conflict preemption is distinct from so-called field preemption whereby the federal law is so integral to the plaintiff's well-pleaded complaint that the claim itself can fairly be said to "arise under" federal law. In that rare circumstance, the state-law claim may be directly removed to federal court, as Boeing sought here. *E.g.*, *Sullivan v. Am. Airlines*, 424 F.3d 267, 272 (2d Cir. 2005). In all other instances, the preemption question is a matter to be proven by the defendant on the merits. *See Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 7 (1983).

to define the types of disputes covered by the RLA as those involving interpretation of a CBA rather than as those disputes between a carrier and its employees. *See Norris*, 512 U.S. at 252–53. Thus, the focus is on what the dispute affects—uniform interpretation and application of CBAs—and not on who is involved in those disputes. And, in fact, in remanding this case to the district court, the learned Chief Judge of the Northern District of Texas determined the claims were not completely preempted for federal jurisdiction purposes and also concluded "the case will require interpretation of the CBA." *See Sw. Airlines Pilots Ass'n v. Boeing Co.*, No. 3:19-CV-2680-M, 2020 WL 2549748, at *5 (N.D. Tex. Apr. 29, 2020) (order granting motion to remand) ("Thus, the Court finds that it does not have federal question jurisdiction under the complete preemption doctrine, even though the case will require interpretation of the CBA.").

## III.

In our panel opinion, this Court held SWAPA's claims are not preempted by the RLA, *see* 45 U.S.C. §§ 151 et. seq., because the RLA applies to disputes between an air carrier and its employees, and Boeing is not a carrier, nor is SWAPA an employee.[4]

---

[4] The panel opinion also states the dispute here "is not a 'minor dispute' to which the mandatory arbitral provisions of the RLA apply." *Norris'* definition of such disputes is simple—and not tied in any way to the activities of the adjustment board—namely, whether the dispute "grows out of . . . the interpretation or application of agreements covering rates of pay, rules, or working conditions." I agree with Chief Judge Lynn's understanding of the claim in this case and with the various federal circuit decisions holding that such claims are preempted by the RLA. The dispute appears to require interpretation of the 2006 CBA and involve the working conditions of the SWAPA members because SWAPA claims it entered into the 2016

–5–

The panel opinion concludes that, regardless of whether the dispute involves the interpretation or application of a CBA, the dispute here is exempted from the RLA by its sections 152, 153, 181, and 184 because it is not one between a carrier and its employee. Section 152 discusses the general duties of "all carriers, their officers, agents, and employees" to "settle disputes . . . between the carrier and the employees thereof," and section 153 establishes the National Railroad Adjustment Board and sets forth its composition, powers and duties, as well as permitting establishment by agreement of regional adjustment boards. *See* 45 U.S.C. §§ 152, 153. Section 181 extends the provisions of the RLA—except section 153—to air carriers, and section 184 permits establishment of adjustment boards to handle disputes involving employees and air carriers. *See id.* §§ 181, 184. The panel opinion relies on the fact that these sections address "disputes" and describe them as being between "carriers" and "employees" to conclude only disputes between those categories of parties could be preempted by the RLA. I disagree.

Section 151a, the preemption provision, applies to "***all disputes growing out of*** . . . the interpretation or application of agreements covering rates of pay, rules, or working conditions." *See id.* § 151a (emphasis added). Nothing in this text or the federal caselaw applying it limits its reach to the activities of adjustment boards.

---

CBA after disputing with Southwest Airlines over whether it had the right to insist that SWAPA's members operate the 737 MAX under the 2006 CBA and after Boeing's misrepresentations and interference with that dispute. Additionally, the calculation of claimed damages in "lost compensation due to the grounding of the 737 MAX" would certainly involve wages and rates of pay calculated under the 2016 CBA. Therefore, I would conclude this to be a "minor dispute."

Instead, section 151a broadly encompasses claims involving non-carrier, non-employer third-parties ranging from manufacturers (as here) to hotel chains, so long as the claim, like this one, would require application and interpretation of the CBA in order for the claimant to prevail. *E.g.*, *Baylis*, 906 F.2d at 877–78. The reason for this breadth of coverage is embraced in the text and purposes of section 151a and its broad sweep, i.e., to include all claims that could affect the interpretation of CBAs and thus invite different, conflicting results. Permitting claims involving third parties to be excluded from the RLA, as the panel opinion argues is necessary, would increase the potential for inconsistent outcomes and give rise to troubling collateral estoppel implications *Norris* and its progeny foreclose. Collateral estoppel (issue preclusion) operates without regard to mutuality of party, but operates only as a one-way street. *See Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 329 (1971) (upholding estoppel but only as against litigants who appeared in the prior action).

In a case such as this, where the association asserts claims for recovery of lost wages arising out of a collective bargaining agreement, the lost wages will often (if not invariably) overlap with claims of lost income to the carrier from which those wages would have been paid. While the association's claims against its employers may be broader or narrower, allowing the claim to proceed against the third party to judgment on issues that would overlap with the carrier's own claims creates the obvious prospect of inconsistent readings of the CBA and the same operative facts.

–7–

And, while the issues may overlap, the parties would not. Thus, if SWAPA were unsuccessful in its claims against Boeing—that, as all agree, must involve the interpretation of a CBA—then Southwest Airlines would be to free to raise the same or similar claims against Boeing in hopes of obtaining exactly the opposite result despite the objectives of section 151a. *Id.*[5]

This is not just a matter of conflict with federal decisional authority from the U.S. Supreme Court and circuit courts of appeal. As a textual matter, the majority's reliance on sections 152, 153, 181 and 184 as somehow limiting the preemptive reach of section 151a is misplaced, as none purport to so limit its text. The analysis ignores the definition of "carrier" in the RLA, which broadly includes companies that "perform[] any service . . . in connection with . . . transportation," or federal precedent preempting state claims litigated with third parties, and thus restricts "disputes" more narrowly than the text of the statute and its interpretation by federal courts. *See* 45 U.S.C. § 151; *see also Baylis*, 906 F.2d at 875, 877 (holding RLA preempted state-law claims from airline employees that hotel tortiously induced the airline to breach its contract with employees); *Westbrook v. Sky Chefs, Inc.*, 35 F.3d 316, 317 (7th Cir. 1994) ("The RLA governs relations between employers that are

---

[5] Of course, if SWAPA were to prevail, Southwest Airlines would urge that the issue was settled subject only to the untangling of the claims under the single recovery rule, assuming this would even be possible. I presume this form of claim splitting was not the intention of this action or even a natural potential result here. It would nevertheless be one made possible in this or other cases under the panel's reading of section 151a and *Norris.*

rail or air carriers *or that engaged in other related activities and their union employees.*") (emphasis added).

In all events, given the magnitude of the panel opinion's holding, I would conclude the issue of federal preemption presented here is suited for en banc reconsideration.[6] *Chakrabarty v. Ganguly*, 573 S.W.3d 413, 415–16 (Tex. App.—Dallas 2019, no pet.) (en banc) ("We will rehear a case en banc where it is necessary to secure uniformity of the Court's decisions and in other extraordinary circumstances, as we deem necessary."). Accordingly, I dissent.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

201067F.P05

---

[6] I do not express any opinion regarding the panel's analysis of the standing issue and would pretermit it following a conclusion the state law claims here are preempted under the RLA.