627 A.2d 1186

■

Thomas ADAM, Thomas Bailey, Andrew Bakaysa, Charles Ba-
kaysa, John Bakaysa, Edward Barrett, Carl Baum, Clair Baum,
Jack Baum, Jack Baumgartner, James Beatty, Carl Beck, Ev-
ertt Bell, Gregg Bell, Thomas Bell, Albert Bell, Donald Ben-
nett, Fred Bennett, Raymond Bennett, Richard Bennett, Ron-
ald Bennett, Barney Bensky, Robert Berlin, John Bishop, Har-
ry Biss, L. Carl Blake, Walter Blume, William Blume, Gray
Bond, Dennis Bouch, Ronald Bouch, Darryl Bowser, Paul
Bracken, Robert Bracken, Christopher Bracken, Christopher
Brink, Daniel Brink, Glen Brink, James Brink, Dale Brooks,
Edgar Brothers, James Buck, William Buck, Richard Byers,
Ernest Cauldwell, Brian Cameron, Jeff Cameron, Kevin Camer-
on, Albert Chiplis, Franklin Clark, Roy Clark, William Clark,
James Clutter, William Collins, Joseph Craft, John Curry,
Edwin Daugherty, Edward Davies, Terry Davies, Richard Delp,
Bernard Diehl, Norman Diehl, Charles Dillon, Donald Dim-
mick, Robert Dufour, David Eger, William Eneminger, Gary
Farmery, William Farmery, Douglas Feaster, Irvin Feaster, Jay
Fishel, William Fleming, Delwyn Fry, Donald Fyock, Gregory
Gardner, Myrel Gardner, Thomas Gardner, Roger Geist, Ken-
neth Gilbert, Ronald Gill, Joseph Glass, Jr., Joseph Glass, Sr.,
John Gowin, Andrew Haag, Charles Haag, Leslie Hamilton,
Russell Harpster, Walter Hauck, Daniel Hewitt, John Hewitt,
David Hoover, Richard Hurd, Gerald Hutton, Robert Hutton,
Robert Johns, James Johnson, Ronald Johnston, Thomas Kawa,
Clair Keller, Jeffrey Kelly, Albert Kitchen, Arthur Kitchen,
David Kitchen, George Kitchen, Guy Kitchen, Larry Kitchen,
Sherman Kitchen, Jerry Kline, Paul Kovalchik, Sherman
Krause, Barry Kruise, Donald Kruise, Ronald Kruise, Terry
Kruise, George Kurtz, Danny Kutruff, Melvin Leamer, Andrew
Lechene, Robert Lee, Terry Lender, Alan Lewis, David Lewis,
Theron Lewis, William Lewis, David Lightner, Kevin Lockett,
Byron Long, David Long, Paul Long, Douglas Lucas, Charles
Lunger, David Lydic, Ernest Lyons, Thomas Mahaffey, Sterry
Mahaffey, Jr., Leonard Martin, Willis Maruna, John Matia,
Joseph Mazenko, Jack McCraken, Thomas McCraken, Thomas
McElleny, Eldon McGarry, Donald McGarvey, John Thomas
McGee, William Wallace McGee, Ronald Meckley, Terry Miller,
James Mills, David Moore, James Mowery, Martin Mulhollen,
Thomas Nellen, Jerome Nevling, Joel Martin Passmore, Charles

544

Peach, Robert Pearce, Robert Pearce, Charles Pennington, Robert Pennington, Ronald Phillipi, Ivan Pierce, Thomas Pontzner, David Queen, Richard Queen, Robert Reitz, Dennis Robbins, Eugene Romagna, John Rose, Charles Ross, John Ross, Thomas Ross, Randy Rowles, Harry Rogh, Donald Sheeder, Larry Schomo, Robert Schomo, Vernon Simmons, Robert Sinclair, Donald Smeal, Garry Smeal, Phillip Smeal, Robert Smeal, Dennis Smith, John Smith, Robert Smith, Raymond Smyers, Richard Snyder, Joseph Soltys, Thomas Spangle, Duane Spencer, Ronald States, Arthur Stiver, Harold Stiver, Irvin Stiver, Duane Strong, Donald Sunderland, Thomas Swauger, James Taylor, Gerald Timchak, Edward Tkacick, Jerbert Von Scoyoc, Lewis Wagner, Michael Wagner, Ronald Wagner, Russell Wallace, George Warholic, Robert Washic, John Weaver, Daniel Webster, Ellis Westover, Gordon Westover, James Westover, Lemoine Westover, Joseph Whitton, Charles Wilkinson, Frank Williams, Thomas Williams, Robert Witherite, Robert Woods, Michael Wright, Robert Wright, Dale Yarger, Gary Yarger, Kenneth Yarger, Dennis Young, John Young and Larry Young

v.

David BENJAMIN, Harry Benjamin and Sally Benjamin, a/k/a Sally Gold

v.

INTERNATIONAL UNION, UNITED MINE WORKERS OF AMERICA,

Appeal of David BENJAMIN.

Superior Court of Pennsylvania.

Argued April 15, 1993.

Filed June 30, 1993.

Reargument Denied Aug. 31, 1993.

546

Carl A. Belin, Jr., Clearfield, for appellant.

Claudia Davidson, Pittsburgh, for appellees.

Before WIEAND, POPOVICH and HESTER, JJ.

POPOVICH, Judge:

We are asked to review the appeal of an order (reduced to judgment [1]) of the Court of Common Pleas of Blair County

1. At the time the order granting the motion for summary judgment was entered, there was no dollar amount affixed for damages. Thereafter,

granting a motion for summary judgment against the defendant/appellant, David Benjamin.[2] We affirm.

As an appellate court, the standard by which we assess the propriety of a motion for summary judgment is well-established; to-wit:

> ... we are bound to consider certain principles which dictate when and under what circumstances a trial court may properly enter summary judgment. The trial court must accept as true all well-pleaded facts in the non-moving party's pleadings, and give to him or her the benefit of all reasonable inferences to be drawn therefrom. Summary judgment should not be entered unless the case is clear and free from doubt. A grant of summary judgment is proper where the pleadings, depositions, answers to interrogatories and admissions on file support the lower court's conclusion that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. We will overturn a trial court's entry of summary judgment only if there has been an error of law or a clear abuse of discretion.

*Lower Lake Dock v. Messinger Bearing*, 395 Pa.Super. 456, 577 A.2d 631, 634 (1990).

The facts underlying this case are as follows: On November 6, 1989, two-hundred and twenty-seven employees/plaintiffs of the Benjamin Coal Company filed a complaint against the officers/directors of the Company, one of whom was the defendant/appellant, David Benjamin, president and treasurer of the board of directors. Paragraph 228; see note 2, supra.

on the 20th day after the grant of the motion, the plaintiffs filed a second motion to fix the amount of the judgment. The court, after reviewing the pleadings, entered an order awarding the plaintiffs $646,-826.14 in wages/benefits, attorney fees/costs, and liquidated damages. This order was reduced to judgment and an appeal followed. See Pa.R.App.P. 301(a), (d).

2. Co-defendants Harry and Sally Benjamin were not named in the plaintiffs' motion for summary judgment. The motion listed David J. Benjamin only as the party against whom judgment was being sought. The other co-defendants are not parties to the instant appeal.

The plaintiffs alleged that, despite a work agreement between the union and the Company, they were informed on June 21, 1989, "there was no more work and not to return to the production site." The plaintiffs claimed, as result of the cessation of operations, they were owed wages (for the period from May 28th to June 21st of 1989) and fringe benefits (vacation time, sickday pay, and monies intended but never used to purchase U.S. Savings Bonds).

The plaintiffs asserted that all monetary items were "wages" entitled to recoupment under Pennsylvania's Wage Payment and Collection Law, (WPCL) 43 P.S. § 260.1 *et seq.*, the amount of which was $479,022.56. See note 1, supra.

Numerous pleadings were filed before the plaintiffs submitted a motion for summary judgment averring that the defendant, a corporate officer and board member of the Company,[3] was liable personally for the wages and benefits sought to be recovered.

In reply to the motion for summary judgment, the defendant argued that the plaintiffs' union (United Mine Workers of America) failed to file a claim in the Company's bankruptcy, an omission which defendant contended foreclosed the plaintiffs from seeking recovery under WPCL. Paragraph 8. Also, the defendant noted that the labor stoppage by the plaintiffs on June 21, 1989, resulted in its "funds" being "frozen" by its banks, and this impaired its ability to meet its payroll obligations to the plaintiffs. Further, the defendant asserted that the work stoppage was violative of the collective bargaining agreement and was the "proximate cause" of "freezing" the Company's available assets to pay wages, benefits, and prompted the Company to convert its Chapter 11 bankruptcy to a Chapter 7. Defendant's Answer to Motion for Summary Judgment, Paragraphs 3, 6 & 8.

By order of court, the plaintiffs' motion was granted and, in the course thereof, the defendant's argument that the federal

3. There is no dispute that the defendant is an "employer" within the meaning of WPCL. See 43 P.S. § 260.2a; Plaintiffs' Motion for Summary Judgment, Paragraphs 12–15; Defendant's Answer to Motion for Summary Judgment, Paragraphs 12–15.

Labor Management Relations Act (LMRA) preempted Pennsylvania's WPCL was found wanting. The court also ruled that the (alleged) conduct of the plaintiffs, subsequent to the termination of employment (on June 21, 1989), did not impact upon the right to recover under WPCL wages earned prior thereto nor was a condition to recovery the filing of a claim in bankruptcy. This appeal followed.

The initial issue we shall address, which is of first impression in this jurisdiction, concerns the averment that federal legislation preempts Pennsylvania's WPCL because the defendant's response (defense) to the plaintiffs' suit for wages "involves the construction of th[e] labor agreement". Additionally, the defendant contends that the work stoppage by the plaintiffs was violative of the limited "no-strike" clause appearing in Article XXIX of the agreement, and, as such, the federal LMRA is implicated and preempts the field of law to resolve the matter to the exclusion of Pennsylvania's WPCL. Appellant's Brief at 30.

Section 301(a) of the LMRA of 1947, 61 Stat. 136, 156, 29 U.S.C. § 185(a) provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

In evaluating the contention of the defendant, we look to *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988) for guidance. There the Court concluded that an Illinois employee covered by a collective bargaining agreement, which provided for a contractual remedy for discharge without cause, could enforce a state-law remedy for retaliatory discharge.

In deciding that Section 301 did not preempt Illinois' wrongful discharge law, the *Lingle* Court held that the employee's claim would be preempted if any collective bargaining

agreement needed to be interpreted in resolving the claim;[4] to-wit:

> Thus, *[Allis–Chalmers Corp. v.] Lueck*[, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985),] faithfully applied the principle of § 301 preemption developed in *[Teamsters v.] Lucas Flour*[, 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962) ]: *if the resolution of a state-claim depends upon the meaning of a collective-bargaining agreement, the application of state law ... is pre-empted and federal labor law principles ... must be employed to resolve the dispute.*
>
> \* \* \* \* \* \*
>
> Illinois courts have recognized the tort of retaliatory discharge for filing a worker's compensation claim, and have held that it is applicable to employees covered by union contracts. "[T]o show retaliatory discharge, the plaintiff must set forth sufficient facts from which it can be inferred that (1) he was discharged or threatened with discharge and (2) the employer's motive in discharging or threatening to discharge him was to deter him from exercising his rights under the Act or to interfere with his exercise of those rights." *Each of these purely factual questions pertains to the conduct of the employee and the conduct and motivation of the employer. Neither of the elements requires a court to interpret any term of a collective-bargaining agreement.* To defend against a retaliatory discharge claim, an

---

4. The defendant's argument that the plaintiffs' violation of the "no-strike" clause (as a defense to payment under WPCL) should be the focus of inquiry is incorrect. We need to look to whether the dispute as *a whole* necessitates inquiry into the collective bargaining agreement for resolution. *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 405–06, 108 S.Ct. 1877, 1881–82 (1988).

Further, "the pre-emptive force of § 301 ... displace[s] entirely any state cause of action 'for violation of contracts between an *employer and a labor organization.'* " *Franchise Tax Bd. of Calif. v. Construction Laborers Vacation Trust for Southern Calif.*, 463 U.S. 1, 23, 103 S.Ct. 2841, 2853, 77 L.Ed.2d 420 (1983) (Emphasis added; citation omitted).

Here, the dispute is between the individual employees (in contrast to the union organization) and the employer/Company. In this situation, a state-law complaint for breach of *individual* employment contracts is not "completely preempted" by Section 301. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394, 107 S.Ct. 2425, 2430, 96 L.Ed.2d 318 (1987).

employer must show that it had a nonretaliatory reason for the discharge; this purely factual inquiry likewise does not turn on the meaning of any provision of a collective-bargaining agreement. Thus, *the state-law remedy in this case is "independent" of the collective-bargaining agreement in the sense of "independent" that matters for § 301 pre-emption purposes: resolution of the state-law claim does not require construing the collective-bargaining agreement.*

\* \* \* \* \* \*

... [W]hile there may be instances in which the National Labor Relations Act pre-empts state law on the basis of the subject matter of the law in question, § 301 pre-emption merely ensures that federal law will be the basis for interpreting collective-bargaining agreements, and says nothing about the substantial rights of a State may provide to workers when adjudication of those rights does not depend upon the interpretation of such agreements. In other words, even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, *as long as the state law claim can be resolved without interpreting the agreement itself, the claim is "independent" of the agreement for § 301 pre-emption purposes.*

486 U.S. at 405–07, 408–10, 108 S.Ct. at 1881–82, 1883–84 (Footnotes omitted; Citations omitted; Emphasis added).

Moreover, in the usual case in which Section 301 is alleged to preempt state law, the state law claim is not a contract claim but a tort claim, and the issue is whether "resolution of [the] state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract." *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 220, 105 S.Ct. 1904, 1916 (1985).

The basis of the state-law claim in this case is that the employees were due wages for work performed, the recovery of which is provided for in a state statute (WPCL). *However, the defense asserted calls for inquiry into the legitimacy of an*

*alleged work stoppage facially prohibited by the limited "no-strike" clause of the bargaining agreement between the union and management.* This would, at first blush, appear to call into play the preemptive effect of LMRA. *Id.*

 Upon close scrutiny of the facts against the backdrop of the applicable law, it must be remembered that damages are not permitted to be entered against individual employees as a result of a breach of a no-strike provision in a collective bargaining agreement.[5] *Complete Auto Transit, Inc. v. Reis,* 451 U.S. 401, 101 S.Ct. 1836, 68 L.Ed.2d 248 (1981); *California Electric Co. v. Briley,* 939 F.2d 790, 794 (9th Cir.1991). Therefore, the provision of WPCL allowing for a "good faith" defense (asserted by the defendant as a violation of the no-strike provision of the bargaining agreement) is to no avail. To find, *arguendo,* merit in such a claim (set-off or counter-claim) under WPCL would be of no force or effect. The remedial nature of WPCL could not be implemented because of the barring effect of federal labor law against penalizing individual employees for the unlawful acts of the union by withholding wages owed or extracting damages from the union members/employees. *Id.* Such authority springs from the Supremacy Clause of the United States Constitution.

Moreover, to find otherwise would permit the defendant to do indirectly (withhold monies due the employees under the WPCL) that which he could not do directly (hold individual employees accountable for a union's violation of a no-strike clause). See generally *Reis,* supra; *Briley,* supra.

5. The defendant's recourse in such an instance would be to file suit for breach of contract against the *labor union* under Section 301 of the LMRA. This could be filed in federal or state court. See *Charles Dowd Box Co. v. Courtney,* 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962); *Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 102, 82 S.Ct. 571, 576, 7 L.Ed.2d 593 (1962).

Also, the defendant could file a complaint with the National Labor Relations Board (NLRB) on the ground that the *union* engaged in an unfair labor practice in directing its members to strike in violation of the no-strike clause in the collective bargaining agreement. The two claims are not mutually exclusive.

Although there is reference in the record that a complaint with the NLRB was filed, we have no insight as to whether any action was commenced under the auspices of Section 301 of the LMRA.

■ Accordingly, because we need not resort to an interpretation of the collective bargaining agreement to evaluate the merits of the plaintiffs' wage claim, the preemptive scope of LMRA is forestalled. See *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 741, 105 S.Ct. 2380, 2390, 85 L.Ed.2d 728 (1985), where state law required employers who bought health insurance for their employees to insist on certain terms in the policies.

The state law at bar, as in *Metropolitan Life Ins. Co.*, supra, created an entitlement that was independent of the collective bargaining contract. As a result, given the nature of Benjamin's defense (conduct of the plaintiffs/employees allegedly violating the no-strike clause of collective bargaining agreement) and the limited remedial measures permitted if such were proven true, there is no occasion to engage in an interpretation of the collective bargaining agreement. Contrast *Allis–Chalmers Corp.*, supra (Right to disability benefits derived from the collective bargaining agreement and was defined by the contractual obligation of good faith so as to trigger the preemptive effect of Section 301); *California Elec. Co. v. Briley*, 939 F.2d 790 (9th Cir.1991) (Employer's state suit against employees for quitting their jobs was preempted by Section 301 because collective bargaining agreement necessarily defined those duties owed to the employer); *McMahon v. McDowell*, 794 F.2d 100 (3rd Cir.1986) (Employees' WPCL suit to recover wages and benefits from corporate officers and directors preempted by Employee Retirement Income Security Act (ERISA) since to determine the amount of any recovery under the WPCL one could do so only by reference to the benefit plans and the provisions of ERISA); *National Metalcrafters, Div. of Keystone v. McNeil*, 784 F.2d 817 (7th Cir. 1986) (Determination of whether the employer's failure to pay vacation benefits was a willful breach of the collective bargaining agreement necessitated an interpretation of the contact, and, as such, was controlled by Section 301's preemption over state wage claim law).

Instantly, we hold that resolution of the plaintiffs' wage-recoupment issue does not necessitate an "interpretation" of

(nor is it inextricably intertwined with) the labor agreement so as to call into play federal labor law to guide us in resolving the dispute. We do so for several reasons:

*First:* Plaintiffs' contention that the wages sought accrued prior to any work stoppage is not disputed by the defendant.

*Second:* The right to recover wages "earned" by the plaintiffs/employees upon separation from employment is a statutory remedy which supplements (rather than supplants) a common law cause of action for breach of contract, 43 P.S. § 260.9a(a); *Laborers Combined Funds of Western Pa. v. Mattie,* 359 Pa.Super. 399, 518 A.2d 1296, 1299 (1986).

*Third:* No contract interpretation is needed to assess the plaintiffs' right to compensation for work performed. The limited "no-strike" clause referred to by the defendant as the vehicle to draw this Court into an interpretation of the collective bargaining agreement (and with it the entire battery of federal labor law on its coat-tails) *is unpersuasive under the particular facts here.* Compare *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (Claim did not turn on any collective bargaining agreement interpretation) and contrast with *Avco Corp. v. Machinists,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968) (Claim required construing collective bargaining agreement).

In light of the preceding discussion, we find no merit to either the defendant's breach of collective bargaining defense or preemption argument.

The next two issues posed for our consideration ("walkout" by employees being a "good faith" defense to liability under WPCL) have been disposed of, by implication, with resolution of the initial claims. We see no need to elaborate further on the matter.

■ The last issue to which we will respond is the defendant's contention that the plaintiffs' failure to file a claim in the Company's bankruptcy action precludes them from seeking relief (money damages) under the banner of WPCL.

Consistent with *Mattei,* supra, the independent nature of a WPCL claim dispenses with the need that a claimant precede his recoupment efforts under statutory law by seeking satisfaction of the indebtedness through the bankruptcy courts. No such circuitous route is mandated in either our state laws or federal rules. We will not, by judicial fiat, impose such a course of procedure now.

Concluding that the defendant's claims do not warrant the relief requested, we will affirm the order appealed.

Order affirmed.

WIEAND, Judge, concurring:

I join the majority's analysis. I write separately only because of my continuing belief that there is nothing discretionary about the entry of summary judgment by a trial court. Pa.R.C.P. 1035(b) permits a trial court to enter a summary judgment if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment *as a matter of law.*" (emphasis added). Whether to enter a summary judgment is purely a question of law, and the entry of such a judgment will be reversed for an error of law. It is incorrect, therefore, to suggest that a trial court's entry of summary judgment will be reversed only for an abuse of discretion.