Butler, J.
Plaintiff Joseph Alston (Alston) brings this action seeking declaratory judgment as to his rights to receive full retirement benefits pursuant to a retirement plan (the Plan) between Alston and his former employer, The Biltrite Corporation (Biltrite). Biltrite has currently reduced Alston’s retirement benefits to zero to offset a worker’s compensation settlement Alston received from Biltrite subsequent to Alston’s retirement. Biltrite claims the payments received by Alston under both the Worker’s Compensation Act and the retirement benefits provision of the Plan would constitute duplicative recoveries, which is not allowed under the terms of the Plan.
Alston alleges that the Plan is ambiguous and that he is entitled to receive a settlement pursuant to the Worker’s Compensation Act without having the settlement amount deducted from his retirement benefits. Biltrite contends that the governing Plan is clear and specific, allowing the amount paid out from a job injury settlement to be deducted from any benefits Alston is entitled to receive under the Plan, including early retirement benefits. Both parties have moved for summary judgment pursuant to Mass. R.Civ.P. 56. For the following reasons, summary judgment is allowed in favor of Biltrite.
BACKGROUND
The undisputed facts are these:
Biltrite employed Alston for thirty-nine years and ten months. On October 16, 1985, Alston sustained an injury while driving a forklift in the Biltrite yard. On January 1, 1986, Alston retired from Biltrite pursuant to a Special Early Retirement provision in Articles II and III of the Plan, which governs the eligibility and distribution of retirement and disability benefits for Biltrite’s employees. The Plan is part of a collective bargaining between Biltrite and its employees. (See exhibit A of complaint, Agreement, p. 7.)
Alston retired under Article II §1 (b)(3) of the Plan which provides that:
1. Employees shall be eligible for: . . .
(b) A Special Early Retirement Benefit. . .
(3) after having completed thirty-five (35) years of continuous service, regardless of age.
Article III sets out the calculation for determining the amount a person retiring under Article II, §1 (b)(3) will receive under the Plan.
Since Alston had worked for Biltrite for thirty-nine years and ten months, he retired with an expectation of receiving Special Early Retirement Benefits pursuant to Articles II and III of the Plan. On February 20, 1986, Alston began to receive his monthly retirement benefits in the amount of $478.47.
On October 29, 1990, Alston received a settlement of $50,130.80 from Biltrite pursuant to G.L.c. 152 for the forklift injuiy he sustained in October 1985. Upon learning of the settlement, on January 23, 1991, Biltrite informed Alston that future payments from the Special Early Retirement provisions of Articles II and III of the Plan would be discontinued until the $50,130.80 Alston received as a result of his worker’s compensation settlement had been offset by the Special Early Retirement Benefits.
Biltrite offset the injury settlement with Alston’s retirement benefits pursuant to Article IV, §§6, 7. Article IV, §§6 and 7 provide that:
6. No employee shall be entitled to a retirement or disability benefit or disability benefit so long as he shall receive, or be entitled to receive, compensation for injury or occupational disease incurred during the course of or arising out of his employment by the Company whether under a workmen’s compensation law or other statutory or common law, or while a claim for such compensation is pending or has not been settled.
7. Any amount paid to or on behalf of any employee on account of occupational injury or occupational disease causing disability, whether arising pursuant to workmen’s compensation laws or other laws (except fixed statutory payments for the loss of any bodily member) shall be deducted from or charged against the amount of any benefit payable under the Plan.
Alston contends that Article IV of the plan is not applicable to Articles II and III. Alternatively, Alston argues that in the event Article IV is applicable to those Articles, the language of the Plan is too ambiguous and this court should construe the language of the Plan in favor of Alston, permitting him to receive his retirement benefits without any deduction because of the injury settlement.
DISCUSSION
At the outset, the Court notes that both parties seek this court’s interpretation of a retirement plan which *315 is part of a collective bargaining agreement. As plaintiffs claim cannot be resolved without interpreting portions of the agreement itself, this state law claim is preempted by §301 of the Labor Management Relations Act, 1947, 61 Stat. 156, 29 U.S.C. §185. Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399, 405-06. Nevertheless, given the parties’ positions, and this court’s recognition that federal law shall apply, the court will proceed to resolve the controversy.
The issue in the case at bar is very similar to the issue decided in Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504 (1981). In Alessi, retired employees from Raybestos and General Motors who had received worker’s compensation awards subsequent to retirement challenged the validity of provisions in their retirement plans reducing pension benefits by an amount equal to worker’s compensation awards which the retirees received.[1] Id. at 507. The Court considered whether such offset provisions were lawful under the Employee Retirement Income Security Act of 1974 (ERISA). The court noted that retirement benefits that are a result of collective bargaining between labor and management are controlled by ERISA. Id. at 526.
The Court further elaborated that ERISA provides that an employee’s right to his normal retirement benefit is nonforfeitable upon attainment of retirement age. 29 U.S.C. §1053(a). ERISA permits the private parties to define the content of the vested benefit that cannot be forfeited. Alessi at 511. The Court stated that the statutory definition of “nonforfeitable” does not guarantee a particular amount or method for calculating the retirement benefit. Id. at 512. Under ERISA, it is the claim to the benefit, rather than the benefit itself that must be unconditional. Id.
The Court determined that retirement benefits agreed to between private parties may be calculated by using a “integration” method in which benefits are determined by considering retirement funds with other sources of income which the retired employee is receiving. Id. at 514. Thus, the Court concluded, postemployment worker’s compensation settlements may be included in this calculation as a method for the employer to cut costs of the pension plan while promoting a system of private pensions. Id. at 517.
The retirement plan from which Alston received his benefits is a product of collective bargaining and controlled by ERISA. That plan specifically reduces all benefits, including retirement benefits by any amounts received pursuant to the worker’s compensation laws, and since Alessi expressly permits such a reduction of retirement benefits by an amount equal to a worker’s compensation award, summary judgment is granted in favor of Biltrite. Biltrite is permitted to offset Alston's retirement benefits by the amount he received incident to a worker’s compensation award.
ORDER
It is therefore ORDERED that summary judgment is GRANTED in favor of Biltrite and that a declaration enter, declaring that Biltrite is entitled to offset Alston’s retirement benefits by the amount of his worker’s compensation award.

 The Supreme Court of the United States examined the language of two offset provisions. Id. at 507. The Raybestos-Manhattan, Inc. plan provided:
All Retirement Income payments shall be reduced by the entire amount of any and all payments the Member is eligible to receive under any and all statutes pertaining to workmen’s compensation, occupational disease, unemployment compensation, cash sickness benefits, and similar laws, other than primary Social Security benefits, presently in effect or which may be enacted from time to time, which payments are paid concurrently with the Retirement Income.
The General Motors plan provided:
In determining the monthly benefits payable under this Plan, a deduction shall be made unless prohibited by law, equivalent to all or any part of Workmen's Compensation (including compromise or redemption settlements) payable to such employee by reason of any law of the United States, or any political subdivision thereof, which has been or shall be enacted, provided that such deductions shall be to the extent that such Workmen’s Compensation has been provided by premiums, taxes or other payments paid by or at the expense of the Corporation . . .
Id. at 507, n.l.