MANSMANN, Circuit Judge,
dissenting.
This case presents the difficult and close question of whether section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), preempts the employees’ action against the owners of the company for unpaid wages, liquidated damages and attorneys fees, which is permitted under the Pennsylvania Wage Payment and Collection Law, 43 Pa.StatAnn. § 260.2, et seq. (1992). We gleaned from the complaint that the former employees of Shannopin Mining Company sued the owners and operators, as well as the major shareholders, of the company because the company is in bankruptcy and has failed to pay them what is due and owing. Because I believe that the employees’ WPCL claims are not preempted, I respectfully dissent from the majority’s opinion. The Su *1122 preme Court’s decision in Livadas v. Bradshaw, 512 U.S. 107, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994), guides my decision.
In Livadas, the Supreme Court held that an employee’s action based upon a state law right to receive a penalty payment from her employer was not preempted under the LMRA even though the penalty was tacked to her wages, which were governed by a collective bargaining agreement. At issue in Livadas was a California law which required employers to pay all wages due immediately upon an employee’s discharge, Labor Code § 201; imposed a penalty for refusal to pay promptly, section 203; and placed responsibility for enforcing these provisions on the Commissioner of Labor. After Karen Liva-das’ employer refused to pay her the wages owed upon her discharge, but paid them a few days later, Livadas filed a penalty claim pursuant to California Labor Code § 203. The Commissioner of Labor responded to Livadas’ request with a form letter construing another provision of the California Labor Code, Labor Code § 229, as barring him from enforcing Livadas’ claim because her terms and conditions of employment were governed by a collective bargaining agreement containing an arbitration cause. The provisions of Labor Code § 229 expressly precluded the Commissioner from adjudicating any dispute concerning the interpretation or application of any collective bargaining agreement containing an arbitration clause.[1] After the Commissioner refused to enforce Livadas’ claim, Livadas commenced an action pursuant to 42 U.S.C. § 1983 alleging that the Commissioner’s non-enforcement policy was preempted by federal law because it abridged her rights under section 7 of the National Labor Relations Act, 49 Stat. 452, as amended, 29 U.S.C. § 157. The Commissioner argued that his non-enforcement policy (and Labor Code § 229) was required by federal law, namely section 301. of the LMRA, which has been read to preempt state-court resolution of disputes' turning on the rights of parties under collective bargaining agreements.
Justice Souter, writing for a unanimous court, disagreed. Presented with the opportunity to preempt California Labor Code provisions granting protections to terminated employees and providing penalties against employers for violation of those protections, the Court instead held preempted the California Labor Commissioner’s policy of refusing to enforce those provisions when the terminated employees were covered by a collective bargaining agreement containing an arbitration clause.
Relying upon its prior decisions in Allis-Chalmers v. Lueck, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), and Lingle v. Norge, Division of Magic Chef, Inc., 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), the Court held that section 301 could not be read broadly to preempt non-negotiable rights conferred upon individual employees as a matter of state law and stressed that it is the legal character of the claim as “independent” of rights under the collective bargaining agreement that decides whether a state cause of action may go forward. The Court reiterated that “[w]hen the meaning of contract terms is not the subject of the dispute, the bare fact that a collective bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished.” Livadas, 512 U.S. at -, 114 S.Ct. at 2077, citing Lingle, 486 U.S. at 413, n. 12, 108 S.Ct. at 1885, n. 12 (“A collective bargaining agreement may, of course, contain information such as rate of pay ... that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled.”).
Accordingly, the Supreme Court concluded that these principles foreclosed even a color-able argument that Livadas’ claim under section 203 of the California Labor Code was preempted. The Court observed that beyond the simple need to refer to bargained for wages rates in computing the penalty, the *1123 collective bargaining agreement was irrelevant to the dispute between Livadas and her employer. The Supreme Court distinguished Livadas’ situation from the situation in Plumbing, Heating and Piping Employers Council of Northern California v. Howard, 53 Cal.App.3d 828, 836, 126 Cal.Rptr. 406 (1975), where an employee sought to have paid an unpaid wage claim based upon his interpretation that his collective bargaining agreement entitled him to a higher wage. The employee there asserted that under the collective bargaining agreement, he was entitled to receive a foreman’s rate of pay and not a journeyman’s. The Supreme Court observed, “that sort of claim, however, derives its existence from the collective bargaining agreement, and accordingly, falls within any customary understanding of arbi-tral jurisdiction.” Livadas, 512 U.S. at - n. 6, 114 S.Ct. at 2072 n. 6 and 512 U.S. at - n. 20, 114 S.Ct. at 2078-79 n. 20.
Interestingly, the Court in Livadas acknowledged that “Courts of Appeals have not been entirely uniform in their understanding and application of the principles set down in Lingle and Lueek,” but found that Livadas, “in which nonpre-emption under § 301 is clear beyond preadventure” was “not a fit occasion ... to resolve disagreements that have arisen over the scope of our earlier decisions.” Livadas, 512 U.S. at - n. 18, 114 S.Ct. at 2078 n. 18.
Livadas is dispositive here. In this case, the employees seek wages allegedly due them for the two weeks they worked prior to their lay-offs as well as vacation pay. Recovery of these wages is expressly provided for by Pennsylvania’s Wage Payment and Collection Law which is virtually identical to the California law involved in Livadas. Both state laws grant a right of compensation for earned wages, including vacation pay. Under the WPCL:
Any employee or group of employees, labor organization or party to whom any type of wages is payable may institute actions provided under this Act.
43 P.A. § 260.9a(a), Adam v. Benjamin, 426 Pa.Super. 543, 627 A.2d 1186, 1191 (1993), alloc. denied, 537 Pa. 628, 642 A.2d 482 (1994), cert. denied, — U.S. -, 115 S.Ct. 92, 130 L.Ed.2d 43 (1994). “The right to recover wages ‘earned’ by the plaintiffs’/employees upon separation from employment is a statutory remedy which supplements (rather than supplants) a common law cause of action for breach of contract.” Adam v. Benjamin, 627 A.2d at 1192. This Pennsylvania right is nonnegotiable and applies to unionized and nonunionized employees alike.
The majority attempts to distinguish Liva-das’ case from this case because the Supreme Court in Livadas found that there , was no dispute between Livadas and her employer over the amount of the penalty to which Livadas was entitled. I do not believe, however, that federal preemption can turn on whether or not an employer chooses to dispute the amount of wages an employee is entitled, under state law, to receive. Thus, I cannot accept the majority’s distinction. To do so would mean that, an employer could utilize section 301 preemption to avoid liability by raising ■ a dispute concerning the amount of wages owed in any given case.[2]
Moreover, in this case, although the owner/operators of the mine contend that the employees’ alleged entitlement to compensation and benefits is in dispute and cannot' be discerned without interpretation of their collective bargaining agreement, they have failed to convince me that specific provisions of the collective bargaining agreement are actually implicated here. In order to determine whether a party’s state law claim is *1124 preempted per section 301, we look to see whether the resolution of the claim depends on the meaning, or requires the interpretation, of a collective bargaining agreement. Lingle, 486 U.S. at 405-406, 108 S.Ct. at 1881. Here, in order to determine the amount of wages owed the former employees of Shannopin Mining Company, a court need only consult the appendix of the National Bituminous Coal Wage Agreement, NBCWA, at the conclusion of the collective bargaining agreement, which sets forth the remuneration that employees are to receive on a daily and hourly basis by job classification. After consulting the appendix, the calculation of any amount of unpaid wages will be based upon a calendar, as well as the employer’s records, showing the amount of time that individual employees have worked. Since the resolution of these employees’ claims for unpaid wages does not depend upon the meaning, or require the interpretation, of a collective bargaining agreement, their claims should not be preempted here.
One final comment about federal labor policy. It is important to note that the employees involved in this case could not receive their duly earned wages from the company through the arbitration process because the company was in bankruptcy after July 24, 19.92, the last day the employees performed work. Thus, I am not concerned that allowing employees to assert their state right to be paid for their earned wages would interfere with the arbitration process in the normal case, or would encourage employees to sidestep available grievance procedures in favor of lawsuits. Consequently, a uniform labor policy in favor of arbitration will not be disturbed by this Pennsylvania procedure which permits the unfortunate employee of a bankrupt company to seek recourse against parties not covered by the collective bargaining agreement through an additional means of redress in these unusual circumstances.

. Labor Code § 229 provides: "Actions to enforce the provisions of this article for the collection of due and unpaid wages claimed by an individual may be maintained without regárd to the existence of any private agreement to arbitrate. This section shall not apply to claims involving any dispute concerning the interpretation or application of any collective bargaining agreement containing such an arbitration agreement.”

. The majority also observes that there was not any indication in Livadas thát "the parties to the collective bargaining agreement understood their arbitration pledge to cover these state-law claims,” Majority Opinion at p. 1117, because the collective bargaining agreement there expressly provided that a direct wage claim not involving interpretation of the agreement could be submitted to any other tribunal or agency that was authorized and empowered to enforce it. Livadas, 512 U.S. at -, 114 S.Ct. at 2079.
The absence of a like provision in the collective bargaining agreement here does not alter my conclusion that the employees’ claims, based on nonnegotiable, nonwaivable rights secured by state law to all employees, exist independently of the parties' collective bargaining agreement.