**Stanley STAFFORD,**
**Plaintiff/Appellant,**

v.

**HESS OIL VIRGIN ISLANDS CORPO-RATION, Defendant/Appellee.**

Civ. App. No. 1998/155.

District Court, Virgin Islands,
Appellate Division,
D. St. Croix.

Considered Dec. 7, 2000.

Filed March 2, 2001.

damages exists under the cited statutory regu- lations, we need not reach this issue.

Ronald E. Russell, St. Croix, U.S. Virgin Islands, for appellant.

Beth Moss, Carl A. Beckstedt III, St. Croix, U.S. Virgin Islands, for appellee.

Before RAYMOND L. FINCH, Chief Judge, District Court of the Virgin Islands; THOMAS K. MOORE, Judge of the District Court of the Virgin Islands; and RHYS S. HODGE, Judge of the Territorial Court of the Virgin Islands, Sitting by Designation.

## OPINION OF THE COURT

PER CURIAM.

Stanley Stafford ("Stafford" or "appellant") appeals the Territorial Court's dismissal of his complaint brought pursuant to the Virgin Islands Wrongful Discharge Act ("WDA"), V.I.Code Ann. tit. 24, § 76 (1986). On appeal, Stafford argues that the Territorial Court erred in the following respects:

(1) in finding that Stafford's WDA claim is preempted by section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a) (1988);

(2) in concluding that Stafford, as an employee covered by a collective bargaining agreement ("CBA"), may not bring a wrongful discharge claim under the WDA because such a claim is excluded by the terms of the WDA itself and

because the CBA requires arbitral dispute resolution; and

(3) in concluding that Stafford's failure to utilize the grievance procedures set forth in the CBA deprived the Territorial Court of jurisdiction.

In addition, Stafford appeals the final order of the Territorial Court striking his second amended complaint.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Stanley Stafford was employed as an operator at Hess Oil Virgin Islands Corporation ("HOVIC") from 1974 until November 1991. On November 22, 1991, HOVIC discharged Stafford from employment for the stated reason of insubordination in connection with an incident in which Stafford refused to submit to a surprise physical examination by HOVIC's female physician. On November 22, 1993, Stafford sued HOVIC alleging breach of contract and wrongful discharge pursuant to section 76 of the Virgin Islands WDA, which prohibits discharging an employee for reasons other than any of the nine enumerated grounds set forth in the statute. At the time of the filing of the instant lawsuit, section 76 provided in pertinent part: [1]

(a) **Unless modified by contract,** an employer may dismiss any employee:

(1) who engages in a business which conflicts with his duties to his employer or renders him a rival of his employer;

(2) whose insolent or offensive conduct toward a customer of the employer injures the employer's business;

(3) whose use of intoxicants or controlled substances interferes with the proper discharge of his duties;

(4) who wilfully and intentionally disobeys reasonable and lawful rules, orders, and instructions of the employer; pro-

---

1. In 1996, the Virgin Islands Legislature amended subsection (a) of the WDA to read "unless modified by *union* contract" where it had previously read "unless modified by contract." *See* 24 V.I.C. § 76 (amended 1996). This change, while reflecting the Legislature's intent that the "unless modified" clause apply to union contracts, has no impact on the instant case because the contract at issue here—a collective bargaining agreement—is indisputably a union contract.

vided, however, the employer shall not bar an employee from patronizing the employer's business after the employee's working hours are completed;

(5) who performs his work assignments in a negligent manner;

(6) whose continuous absences from his place of employment affect the interests of his employer;

(7) who is incompetent or inefficient, thereby impairing his usefulness to his employer;

(8) who is dishonest; or

(9) whose conduct is such that it leads to the refusal, reluctance or inability of other employees to work with him.

(b) The Commissioner may by rule or regulation adopt additional grounds for discharge of an employee not inconsistent with the provisions enumerated in subsection (a) of this section.

(c) Any employee discharged for reasons other than those stated in subsection (a) of this section shall be considered to have been wrongfully discharged; however, nothing in this section shall be construed as prohibiting an employer from terminating an employee as a result of the cessation of business operations or as a result of a general cutback in the work force due to economic hardship, or as a result of the employee's participation in concerted activity that is not protected by this title.

24 V.I.C. § 76 (1986) (emphasis added).

At the time of his discharge from HOVIC, Stafford was covered by a CBA between HOVIC and the United Steelworkers Union ("Union"). HOVIC moved for dismissal of the action, or alternatively for summary judgment claiming that section 301 of the LMRA preempted Stafford's claims, and that the court lacked jurisdiction as a result of the controlling CBA. On May 12, 1998, the Territorial Court granted HOVIC's motion to dismiss finding that Stafford's claims were preempted by section 301 of the LMRA and that the trial court lacked jurisdiction as a result of the CBA. This appeal followed.

## II. DISCUSSION

### A. Jurisdiction and Standards of Review

The Appellate Division of the District Court of the Virgin Islands has jurisdiction to review the decision of the Territorial Court pursuant to 4 V.I.C. § 33. Because the Territorial Court's grant of dismissal turned on questions of law, this Court exercises plenary review with respect to the dismissal. *See Julien v. Government of the Virgin Islands*, 36 V.I. 165, 168–69, 961 F.Supp. 852, 854 (D.V.I.App.Div.1997); *Vandenberg ex rel. Newman v. Williams*, 32 V.I. 385, 387, 891 F.Supp. 244, 246 (D.V.I.App.Div.1995). This Court applies an abuse of discretion standard of review to the trial court's decision to strike Stafford's second amended complaint. *See Guardian Ins. Co. v. Joseph*, 31 V.I. 145, 152 (D.V.I.App.Div.1994).

### B. Preemption by Section 301 of the Labor Management Relations Act[2]

The Territorial Court found that section 301 of the LMRA preempts Stafford's

**2.** In his supplemental appellate brief, Stafford contends that this case is controlled by the decision of the Third Circuit Court of Appeals in *St. Thomas–St. John Hotel & Tourism Assoc., Inc. v. Government of the Virgin Islands*, 218 F.3d 232 (3d Cir.2000). In *Hotel & Tourism*, the court held that the Virgin Islands WDA was *not* preempted by section 7 of the National Labor Relations Act, 29 U.S.C. § 157. *Id.* at 246. Stafford, however, confuses NLRA section 7 preemption with LMRA section 301 preemption, the analysis to be applied in this case. The NLRA preempts state laws that " 'upset the balance of power between labor and management expressed in our national labor policy.' " *Machinists v. Wisconsin Employment Relations Comm'n*, 427 U.S. 132, 146, 96 S.Ct. 2548, 49 L.Ed.2d 396 (1976), (quoting *Teamsters v. Morton*, 377 U.S. 252, 260, 84 S.Ct. 1253, 12 L.Ed.2d 280 (1964)). LMRA preemption, on the other hand, addresses the need for uniform federal policies regarding the negotiation and enforcement of collective bargaining agree-

claim because "any resolution of his claim is substantially dependent upon analysis of the terms of the collective bargaining agreement and plaintiff has no territorial claims that are independent of the CBA." *Stafford v. HOVIC,* Civ. No. 928–1993, 1998 WL 290237, at *6 (Terr.Ct. May 12, 1998). On appeal, Stafford contends that his territorial law claim is not preempted because it is independent of the CBA and may be resolved without interpretation of the CBA.

Section 301 of the LMRA provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a) (1998).

Although section 301 appears to be simply a jurisdictional provision, a substantial body of case law has developed surrounding section 301's preemptive force over state laws that impact the interpretation and application of collective bargaining agreements. Section 301 "has been interpreted as authorizing federal courts to fashion a body of common law for the enforcement of collective bargaining agreements." *Antol v. Esposto,* 100 F.3d 1111, 1115 (3d Cir.1997) (citing *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 456, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957)). "Section 301 preemption 'ensures that federal law will be the basis for interpreting collective bargaining agreements.'" *Id.* (quoting *Lingle v. Norge, Div. of Magic Chef, Inc.,* 486 U.S. 399, 411, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988)). "An underlying reason for the development of federal law in this area is the need for uniform interpretation of contract terms to aid both the negotiation and the administration of collective bargaining agreements." *Id.* (citing *Local 174, Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 103–04, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962)). "The preemption rule has been applied to assure that the purposes animating § 301 will [not] be frustrated ... by state laws purporting to determine 'questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement.'" *Livadas v. Bradshaw,* 512 U.S. 107, 122–23, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994) (quoting *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 211, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985)).

■ Application of the section 301 preemption doctrine has not been completely consistent. *Antol,* 100 F.3d at 1115. On one hand, the Supreme Court has noted that "the preemptive force of § 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.' Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301." *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 23, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983) (quoting 29 U.S.C. 185(a)). On the other hand, the Supreme Court has clearly limited the application of the preemption doctrine, stating in *Allis–Chalmers,* 471 U.S. at 220, 105 S.Ct. 1904, "[n]or do we hold that every state-law suit asserting a right that relates in some way to a provision in a collective-bargaining agreement, or more generally to the parties to such an agreement, necessarily is

ments. *See Local 174 Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 103–04, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962); *Lingle v. Norge, Div. of Magic Chef, Inc.,* 486 U.S. 399, 410–11, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). Thus, preemption under [the NLRA] involves considerations related to, but distinct from those

at issue in the instant case. *See Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 212, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985); *see also Hurst v. Consolidated Freightways Corp. of Del.,* Civ. No. 88–0744, 1990 WL 43934 (M.D.Pa. April 5, 1990). Stafford's argument that *Hotel & Tourism* is controlling must fail.

pre-empted by § 301." *Id.* Thus, the full scope of the preemptive effect of federal labor-contract law must be determined on a case-by-case basis. *See id.*

 The touchstone of the section 301 preemption analysis, as it is applied today, was first set forth in *Allis–Chalmers*. The *Allis–Chalmers* Court held that a state-law claim is preempted "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract." 471 U.S. at 220, 105 S.Ct. 1904 (finding that an employee's state-law tort claim [3] against his employer for bad-faith processing of his disability-benefits insurance claim was preempted by section 301 because "[t]he duties imposed and rights established through the state tort ... derive from the rights and obligations established by the [collective bargaining agreement]" and necessarily involve interpretation thereof). The "substantially dependent" standard was upheld by the Court in cases to follow. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 394–395, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (finding no preemption where individual oral contracts between employer and employee were outside CBA and neither contracts nor their breach were substantially dependent upon interpretation of CBA); *see also Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988) (finding no preemption where employee claimed retaliatory discharge for her filing of a workers' compensation claim since claim raised purely factual questions on motivations of the employer, not requiring interpretation of CBA).

Accordingly, under the "substantially dependent" analysis, state-law rights and obligations that do not exist independently of ·collective bargaining agreements, and that as a result can be waived or altered by such agreements, are preempted by those agreements. *Allis–Chalmers*, 471 U.S. at 213, 105 S.Ct. 1904. Thus, our analysis must focus on whether the WDA "confers nonnegotiable state-law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of [Stafford's] ... claim is inextricably intertwined with consideration of the terms of the labor contract." *Id.* In conducting this analysis, we bear in mind the limitations of the preemption principle set forth by the United States Supreme Court and reiterated by the Third Circuit Court of Appeals. Section 301

> cannot be read broadly to pre-empt non-negotiable rights conferred on individual employees as a matter of state law ... it is the legal character of a claim, as "independent" of rights under the collective-bargaining agreement, ... that decides whether a state cause of action may go forward. Finally ... when the meaning of contract terms is not the subject of dispute, the bare fact that a · collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished.

*Voilas v. General Motors Corp.*, 170 F.3d 367, 375 (3d Cir.1999) (quoting *Livadas*, 512 U.S. at 122–24, 114 S.Ct. 2068) (internal quotations omitted).

 Applying these standards, we find that Stafford's claim under the Virgin Islands wrongful discharge statute does not exist independently of the CBA, because the language of the WDA itself—specifically, the words *"unless modified by contract "*—requires this Court and the trial court to analyze the terms of the CBA to determine whether it modified the nine enumerated grounds for discharge provided by the WDA. The Court of Appeals has expressly found that the "unless modified by [union] [4] contract ..." language of the

---

**3.** Section 301 preemption has been expanded to apply to tort as well as contract claims.

*See Allis–Chalmers,* 471 U.S. at 211, 105 S.Ct. 1904.

**4.** The Third Circuit's opinion pertains to the

WDA constitutes an "opt-out provision" entitling unions to negotiate for alternative discharge provisions. *St. Thomas–St. John Hotel & Tourism Assoc., Inc. v. Government of the Virgin Islands*, 218 F.3d 232, 245 (3d Cir.2000) (the WDA "provides an opt-out by express terms of union contract"). Obviously, then, the trial judge and this Court would be required to examine the terms of the CBA to determent whether HOVIC and its union elected to exercise their right under the WDA to opt out of its provisions. This section 301 prohibits us from doing. The section 301 preemption doctrine is clear on one point: "When 'state law rights . . . [can be] waived or altered by the collective bargaining agreement, the statutory rights are completely preempted. . . .'" *Commonwealth Edison Co. v. International Brotherhood of Electrical Workers, Local 15*, 961 F.Supp. 1154 (N.D.Ill.1996) (quoting *Allis–Chalmers*, 471 U.S. at 213, 105 S.Ct. 1904).

Further, Stafford argues that the factual inquiry in his case will turn on his medical condition and his reasons for refusing to submit to a surprise medical examination by HOVIC. He claims that under the WDA, he must show that his refusal of the examination did not constitute insubordination, an analysis that can be conducted without interpreting the CBA and also an analysis that would be identical to one required in an arbitration proceeding under the CBA. Stafford relies on *Lingle*, a case with similar facts, for the proposition that "as long as the state-law claim can be resolved without interpreting the collective bargaining agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes." *See* 486 U.S. at 403, 108 S.Ct. 1877. In short, Stafford

argues that a determination of the merits of his state-law claim does not require looking to the CBA.

Even if Stafford could prove the *facts* of his state-law claim without relying on an interpretation of the CBA, however, a threshold interpretation of the CBA would be required to determine whether the terms of the CBA modified or altered Stafford's rights under the WDA. This necessary determination of whether the CBA modifies the WDA is the block which preempts Stafford's state-law claim. *See Livadas v. Bradshaw*, 512 U.S. 107, 123–24, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994) (holding that it is the "legal character of a claim, as independent of rights under the collective-bargaining agreement, (and not whether a grievance arising from 'precisely the same set of facts' could be pursued) that decides whether a state cause of action may go forward" (internal citations omitted)).

Such interpretation by this Court is prohibited by the section 301 preemption doctrine. Accordingly, this Court must affirm the finding of the Territorial Court that section 301 of the LMRA preempts Stafford's wrongful discharge claim.

## III. CONCLUSION

The decision of the Territorial Court finding that Stafford's claim is preempted by section 301 of the LMRA shall be affirmed.[5] Accordingly, because preemption of Stafford's claim alone mandates dismissal of his action, and because no count of Stafford's proposed second amended complaint survives the preemption analysis, it

post-amendment language specifying "by *union* contract." However, because the instant CBA is both a contract (pre–1996) and a union contract (post–1996), the analysis is identical here.

**5.** When resolution of a state-law claim is substantially dependent upon analysis of the terms of a collective bargaining agreement, that claim must either be dismissed as

preempted by federal labor-contract law or treated as a section 301 claim. *Allis–Chalmers*, 471 U.S. at 221, 105 S.Ct. 1904. Even if Stafford had asserted that this claim should be treated as a section 301 claim, such claim should be dismissed for his failure to make use of the grievance procedure established in the CBA. *See id.*

is not necessary for this Court to evaluate Stafford's other grounds for appeal.