*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MICHAEL HAYGOOD,

Plaintiff-Appellant,

UNPUBLISHED
March 3, 2020

v

GENERAL MOTORS, LLC,

Defendant-Appellee.

No. 346470
Macomb Circuit Court
LC No. 2018-002582-NZ

Before: SHAPIRO, P.J., and JANSEN and M. J. KELLY, JJ.

PER CURIAM.

Plaintiff Michael Haygood appeals the trial court's opinion and order granting defendant General Motors, LLC, summary disposition pursuant to MCR 2.116(C)(7) (statute of limitations) and MCR 2.116(C)(10) (no genuine issue of material fact). We reverse and remand for further proceedings consistent with this opinion.[1]

## I. BACKGROUND

Plaintiff alleges, in part, that GM tortuously interfered with his employment with nonparty Aramak by banning him from all GM facilities, and that the ban was predicated on defamatory statements made by GM employees. Plaintiff worked for GM for 40 years as a skilled trades helper before retiring in 2009. In 2010, he began working as a custodian for Aramak, who provides custodial services to GM. In that capacity, plaintiff worked exclusively at GM's Technical Center in Warren.

According to plaintiff, he experienced ongoing and extensive problems with a GM vehicle that he leased in 2015. During the course of his employment, plaintiff discussed these problems with several GM employees, including a vice-president who suggested that plaintiff send an e-mail describing the problems. The amended complaint provides the following allegations about

---

[1] We review de novo a trial court's decision to grant summary disposition. *Cichewicz v Salesin*, 306 Mich App 14, 21; 854 NW2d 901 (2014).

-1-

the events leading up to plaintiff's discharge from Aramak. In a telephone conference with GM's customer service department on October 11, 2016, plaintiff and his wife discussed the vehicle's problems and plaintiff's wife stated that, if the problems were not addressed, she would raise the problems with GM's chief executive officer in a public forum scheduled for that week, and would also retain a lawyer. Three days after this telephone conference, while plaintiff was at work, he was told to gather his belongings and return his badge and gate pass before he was escorted from the premises of GM's Tech Center with no explanation. GM banned plaintiff from all of its facilities. On October 18, 2016, plaintiff was interviewed by Aramark's human resources manager, who repeatedly instructed plaintiff to be honest. On October 20, 2016, Aramak terminated plaintiff.

Plaintiff's union filed a grievance pursuant to the collective bargaining agreement between Aramark and plaintiff's union (UAW-Aramark CBA). Plaintiff alleges that his union sought information from GM regarding the ban and the circumstances leading up to it, but that GM refused to provide any information. On February 1, 2017, the union learned that GM employees had made statements regarding plaintiff to a GM security investigator that led to plaintiff's ban. Specifically, it was reported that plaintiff, presumably during the course of his employment, threatened a GM "team lead" in the "Executive Care Center," threatened an administrative assistant, and refused to leave the executive office area. It was also reported that plaintiff contacted GM's customer care center and stated he would continue to harass leadership until the problem regarding his vehicle was resolved. Plaintiff denies making those statements and engaging in that behavior.

The grievance was resolved by settlement. The settlement included Aramark's acknowledgment that it terminated plaintiff solely because of GM's decision to ban plaintiff from GM's property, and Aramark's agreement to reinstate plaintiff if, within 18 months of the date of the settlement agreement, GM rescinded that decision.

## II. PROCEDURAL HISTORY

On January 31, 2018, plaintiff brought suit against GM in federal court, asserting claims of race discrimination under 42 USC 1981, and state-law claims of defamation and tortious interference. On July 6, 2018, the district court dismissed with prejudice the federal claim of race discrimination, and declined to exercise supplemental jurisdiction over the state-law claims, thereby dismissing them without prejudice.

On July 12, 2018, plaintiff brought the instant suit against GM, asserting claims of defamation and tortious interference with a business relationship or expectancy. He asserted that the one-year statute of limitations for defamation should be tolled by GM's fraudulent concealment, i.e., affirmatively refusing to provide requested information regarding plaintiff's ban from the premises.

In lieu of filing an answer, GM moved for summary disposition. Regarding defamation, GM argued that summary disposition was proper under MCR 2.116(C)(7) because although plaintiff alleged that GM deliberately withheld and refused to provide information, mere silence was not sufficient to invoke tolling of the limitations period. GM also sought summary disposition under MCR 2.116(C)(8) on the ground that plaintiff failed to plead the elements of defamation with specificity. As for the claim of tortious interference, GM argued that it was time barred

because that claim was preempted by § 301 of the Labor Management Relations Act, 1947 (LMRA), 29 USC 185, and therefore subject to a six-month statute of limitations. In arguing that plaintiff's claim would require interpretation of the UAW-Aramark CBA, GM relied on the fact that plaintiff's union had grieved his discharge and attached a copy of the agreement to its motion.

In response to GM's motion for summary disposition, plaintiff argued that he pleaded affirmative actions or misrepresentations by GM that were sufficient to invoke the fraudulent-concealment statute, and that he pleaded defamation with sufficient specificity. Plaintiff also denied that his claim for tortious interference was preempted by § 301 of the LMRA. He pointed out that GM was a nonsignatory third party to the UAW-Aramark CBA, and argued that the agreement was irrelevant to this claim. He disputed that his grievance had any bearing on the preemption issue, but noted the settlement between Aramark and plaintiff's union over the grievance and he attached a copy of the settlement to his response brief.

After hearing oral argument, the trial court took the matter under advisement. In a written opinion and order issued, the trial court first granted summary disposition of the defamation claim under MCR 2.116(C)(7) on the grounds that it was barred by the statute of limitations. The court reasoned that there could be no fraudulent concealment if there was a known cause of action, and found that plaintiff should have been aware of a possible cause of action as early as October 18, 2016 when, during his interview with Aramark's human resources manager, he was repeatedly told to be honest, which plaintiff should have understood to imply that he was not being honest. The court stated, "Inasmuch as plaintiff maintains he did nothing improper and was wrongfully terminated, he would have been aware that *any* proffered reasons for defendant's banning of his person from the Tech Center were false." In addition, the trial court concluded that plaintiff failed to plead acts that constitute fraudulent concealment because GM's refusal to respond to the union's inquiries was mere silence.

The trial court then turned to the claim of tortious interference with a business relationship or expectancy, and determined that it would treat the GM's motion as having been brought under MCR 2.116(C)(10) given the documentary evidence submitted by the parties. The court first found that plaintiff's tortious-interference claim was based on GM's alleged banning of plaintiff from the Tech Center. The court then concluded that plaintiff could not maintain his claim on that allegation because Aramark provided services to clients other than GM and therefore Aramark could have continued plaintiff's employment by transferring him to one of GM's other facilities or to a different client's facilities.[2] The trial court explicitly did not address the preemption issue.

Plaintiff moved for reconsideration, arguing that the trial court committed numerous procedural and substantive errors in granting GM summary disposition. The trial court denied reconsideration in a written order.

---

[2] In its original opinion, the trial court found that plaintiff was banned only from the GM Tech Center and therefore could have worked at other GM facilities. In its motion for reconsideration, the trial court corrected itself, implicitly acknowledging that plaintiff alleges that he was banned from *all* GM facilities.

## III. ANALYSIS

We agree with plaintiff that the trial court erred in granting GM summary disposition of his claims. The trial court erred in concluding as a matter of law that plaintiff could not show fraudulent concealment because he must have known that GM employees made false allegations about him to Aramak. As to tortious interference, the trial court erred in concluding as a matter of law that plaintiff could not prove causation. That ruling was inconsistent with the limited record evidence before the court. We also conclude that plaintiff's tortious-interference claim is not preempted by the LMRA because that claim does not require interpretation of the UAW-Aramark CBA.

## A. DEFAMATION

Plaintiff's defamation claim is based on allegations that GM employees made false statements about him that led to his ban from all GM facilities. Those statements would have been made in October 2016, but plaintiff alleges that he did not learn of them until February 2017 because of GM's fraudulent concealment. Accordingly, whether plaintiff's federal action alleging defamation in January 2018 was timely turns on the application of the fraudulent-concealment statute. Before addressing whether plaintiff sufficiently pleaded acts that constitute fraudulent concealment, however, the trial court determined that plaintiff knew he had a claim of defamation at the time of his discharge and thus his claim was time barred regardless of any fraudulent concealment. That ruling was erroneous.[3]

The fraudulent-concealment statute provides:

> If a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim, the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations. [MCL 600.5855.]

The trial court granted summary disposition under MCR 2.116(C)(7) on the grounds that the defamation claim was barred by the one-year statute of limitations, see MCL 600.5805(11), because he should have known of his cause of action at the time of his discharge. When evaluating motions for summary disposition under that sub-rule, the contents of the complaint are accepted as true unless contradicted by documentation submitted by the movant. *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). Here, no documentary evidence contradicted plaintiff's

---

[3] Plaintiff also challenges the trial court's ruling on the grounds that GM never asserted that plaintiff knew or should have known that GM made defamatory statements about him as of the time he was fired, and therefore the court's finding on that matter deprived plaintiff of due process. He raises the same argument regarding the court's finding that Aramark could have transferred plaintiff to another facility of GM's or to a different client. Because we reverse the trial court on the substance of its rulings, we decline to address the due-process argument.

allegation that he did not become aware of the defamatory statements until February 1, 2017. Nonetheless, the trial court found that plaintiff would have known that *any* proffered reason for his discharge was false considering that the human resources manager told him to be honest during the interview preceding his discharge. In other words, the court found that plaintiff should have known that the reason for his discharge was false, even if he did not know what that reason was or even if it was based on statements made by GM employees. The trial court's reasoning runs afoul of the rule that well-pleaded allegations should be construed in a light most favorable to the *plaintiff* when summary disposition is sought under MCR 2.116(C)(7). See *Armstrong v Ypsilanti Charter Twp*, 248 Mich App 573, 583; 640 NW2d 321 (2001).

Further, plaintiff's mere knowledge that he disagreed with the unknown reason for his discharge did not gave rise to an actionable defamation claim. "A plaintiff claiming defamation must plead a defamation claim with *specificity* by identifying the exact language that the plaintiff alleges to be defamatory." *Thomas M Cooley Law Sch v Doe 1*, 300 Mich App 245, 262; 833 NW2d 331 (2013) (emphasis added). Under the trial court's reasoning, at the time of his discharge plaintiff should have been able to deduce that someone at GM made a false statement about him. But without more, a defamation claim on those grounds would lack the specificity required to survive a motion for summary disposition under MCR 2.116(C)(8). For these reasons, the trial court erred in finding that plaintiff knew he had a claim of defamation at the time of his discharge.[4]

The trial court also held that plaintiff's amended complaint did not identify actions constituting fraudulent concealment. We conclude that plaintiff is entitled to discovery before his claim of fraudulent concealment may be evaluated.

"For the fraudulent-concealment exception to apply, a plaintiff must plead in the complaint the acts or misrepresentations that comprised the fraudulent concealment and prove that the defendant committed affirmative acts or misrepresentations that were designed to prevent subsequent discovery." *Mays v Snyder*, 323 Mich App 1, 39; 916 NW2d 227 (2018) (quotation marks and citations omitted). "Fraudulent concealment means employment of artifice, planned to prevent inquiry or escape investigation, and mislead or hinder acquirement of information disclosing a right of action." *Doe v Roman Catholic Archbishop of Archdiocese of Detroit*, 264 Mich App 632, 642; 692 NW2d 398 (2004) (quotation marks and citation omitted).

Plaintiff alleged that, because GM refused to respond to requested information about the reasons it banned him from its facilities, he did not learn of the alleged defamatory statements made about him by one or more of GM's employees until February 1, 2017. In determining that plaintiff failed to adequately plead fraudulent concealment, the trial court relied on the rule that "mere silence" by the defendant is insufficient to show fraudulent concealment. See e.g., *Sills v Oakland Gen Hosp*, 220 Mich App 303, 310; 559 NW2d 348 (1996). GM may not have had a duty to volunteer information to plaintiff or his union regarding the reasons for the ban, but we are not aware of any caselaw holding a failure to respond to a lawful request for information constitutes mere silence. To the contrary, in *Kroes v Harryman*, 352 Mich 642; 90 NW2d 444 (1958), the

---

[4] Discovery may show that plaintiff knew more about the reasons for the ban or his discharge than indicated by his complaint. Similarly, discovery may show that plaintiff had alternative means of obtaining that knowledge. At this juncture, however, the complaint must be accepted as true.

Supreme Court relied on the lack of direct inquiry in concluding that the defendant had not engaged in fraudulent concealment. *Id*. at 647 ("There is no showing that defendant doctor, at any time, made any attempt to hide his source of supply, or evaded inquiries with respect thereto. In fact, we do not find in this record that such inquiries were ever directed to him.").

Given the lack of binding precedent on this matter, we decline to adopt a blanket rule whether or not refusing to respond to lawful inquiries may constitute fraudulent concealment. The answer to that question may vary from case to case depending on the circumstances. Thus, we conclude that it is premature to decide this issue. The parties should be given an opportunity to conduct discovery concerning the claim of the alleged concealment before it may be decided as a matter of law whether the tolling statute applies in this case. See *Rooyakker & Sitz, PLLC v Plante & Moran, PLLC*, 276 Mich App 146, 160; 742 NW2d 409 (2007) ("Generally, a motion for summary disposition is premature if granted before discovery on a disputed issue is complete.") (quotation marks and citation omitted).

## B. TORTIOUS INTERFERENCE

In addition to challenging the substance of the trial court's ruling, plaintiff argues that the court committed multiple procedural errors in granting summary disposition of his tortious-inference claim. Specifically, he argues that the trial court erred in treating GM's motion under MCR 2.116(C)(8) as one made pursuant to MCR 2.116 (C)(10) and considering materials outside the pleadings. See *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 164; 934 NW2d 665 (2019) (holding that it was error to evaluate the plaintiff's allegations under MCR 2.116(C)(10) when the motion was brought under MCR 2.116(C)(8)). However, we decline to decide this question because we conclude that the trial court erred in granting summary disposition under subrule (C)(10).[5]

The elements of tortious interference with a business relationship are (1) the existence of a valid business relationship or expectancy, (2) knowledge of the relationship or expectancy on the part of the defendant, (3) an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and (4) resultant damage to the plaintiff. *BPS Clinical Labs v Blue Cross & Blue Shield of Mich*, 217 Mich App 687, 698-699; 552 NW2d 919 (1996).

In granting GM summary disposition, the trial court found, by judicial notice, that Aramark provided services to clients other than GM. Therefore, the court reasoned, the banning of plaintiff from GM facilities did not mandate that Aramark terminate plaintiff's employment because Aramark could have transferred plaintiff to a different client. Plaintiff argues that this finding was speculative as no evidence related to that issue had been presented. He further argues that even if

---

[5] "A motion brought under MCR 2.116(C)(10) tests the factual support for a party's claim." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). When addressing a motion for summary disposition brought under subrule (C)(10), the court must examine all documentary evidence presented to it, and drawing all reasonable inferences in favor of the nonmoving party, determine whether a genuine issue of material fact exists. *Dextrom v Wexford Co*, 287 Mich App 406, 430; 789 NW2d 211 (2010).

assignment to a different client was a possibility, it would have been contingent on there being an opening, which may or may not have been the case.

More important, the trial court misconstrued the nature of plaintiff's claim. Plaintiff alleges that GM's actions caused the termination of his employment. Whether those actions *required* Aramak to discharge plaintiff is irrelevant. As noted, in the grievance settlement with Aramak, the company acknowledged that GM's banning of plaintiff was the reason for his termination, and it agreed to reinstate plaintiff if within 18 months of the date of the settlement agreement, GM rescinded that decision. Thus, the trial court's ruling, which essentially concluded that plaintiff failed to establish causation, is plainly contradicted by the limited record evidence.

GM's argument that plaintiff's claim fails because it has the right to exclude people from its premises is similarly misplaced. "[I]n order to succeed under a claim of tortious interference with a business relationship, the plaintiffs must allege that the interferer did something illegal, unethical or fraudulent." *Early Detection Center, PC v New York Life Ins Co*, 157 Mich App 618, 631; 403 NW2d 830 (1986). There are two different ways to allege an improper act. The plaintiff must allege either "the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another." *CMI Intern, Inc v Intermet Intern Corp*, 251 Mich App 125, 131; 649 NW2d 808 (2002).

GM had the right to ban plaintiff from its property. However, plaintiff is alleging that the ban stemmed from false statements made about him by GM employees and that it resulted in his termination from his employment with Aramak. If plaintiff can prove that the statements were defamatory and caused his discharge he will have established a wrongful act sufficient to support a claim for a tortious interference.[6]

As an alternative ground for affirmance, GM argues that plaintiff's tortious-interreference claim is preempted by § 301 of the LMRA.[7] § 301 provides in part:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the

---

[6] The fate of plaintiff's tortious interference claim does not depend on the timeliness of the defamation claim. Tortious interference has a three-year statute of limitations. See MCL 600.5805(3); *Blazer Foods, Inc v Restaurant Properties, Inc*, 259 Mich App 241, 253; 673 NW2d 805 (2003). The fact that plaintiff alleges that the interference was accomplished by the making of false statements means he must prove that defamatory statements were made, not that he has a timely cause of action for defamation.

[7] As noted, the trial court declined to address the preemption issue. Nonetheless, the issue is preserved for appellate review because it was raised by GM. See *Peterman v Dep't of Natural Resources*, 446 Mich 177, 183; 521 NW2d 499 (1994); *Middlebrooks v Wayne Co*, 446 Mich 151, 166 n 41; 521 NW2d 774 (1994).

amount in controversy or without regard to the citizenship of the parties. [29 USC 185(a).]

Based on this provision, the enforcement of collective bargaining agreements is governed by federal law. See *Textile Workers Union of America v Lincoln Mills of Alabama*, 353 US 448, 450-451; 77S Ct 912; 1 L Ed 2d 972 (1957). Thus, "a suit in state court alleging a violation of a provision of a labor contract must be brought under § 301 and be resolved by reference to federal law." *Allis-Chalmers Corp v Lueck*, 471 US 202, 210; 105 S Ct 1905; 85 L Ed 2d 206 (1985). This "ensure[s] [the] uniform interpretation of collective-bargaining agreements, and . . . promote[s] the peaceable, consistent resolution of labor-management disputes." *Lingle v Norge Div of Magic Chef, Inc*, 486 US 399, 413; 108 S Ct 1877; 100 L Ed 2d 410 (1988). Preemption also applies to state law tort claims that would require interpretation of the collective bargaining agreement. *Lingle*, 486 US at 413; *Lueck*, 471 US at 213.

In *Lingle*, 486 US at 401, the United States Supreme Court held that the plaintiff-employee's state-law claim of retaliatory discharge for filing a worker's compensation claim was not preempted by § 301. *Id*. at 401. In so concluding, the Court determined that no element of the claim "requires a court to interpret any term of a collective-bargaining agreement." *Id*. at 407. The Court further explained that it was immaterial that the worker had filed a grievance pursuant to the collective bargaining agreement that involved the same facts as the state law claim:

> [E]ven if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is "independent" of the agreement for § 301 pre-emption purposes. [*Id*. at 408-409.]

Following *Lingle*, in *Dougherty v Parsec, Inc*, 872 F2d 766 (CA 6, 1989), the Sixth Circuit held that a tortious interference claim against a third party was not preempted in a case substantially similar to present circumstances. In *Dougherty*, the plaintiff-employee brought suit against a client of his employer, alleging that the client tortuously interfered with his employment by requesting that the employer discharge him. *Id*. at 767. Initially, the Sixth Circuit held that the claim was preempted, but the Supreme Court vacated that judgment and remanded for reconsideration in light of *Lingle*. *Id*. On remand, the court determined the elements of the state law claim and concluded they would not require interpretation of the collective bargaining agreement:

> If the case goes to trial, [the client] will deny any wrongdoing and will provide [employer] witnesses to state the reasons why Plaintiff was discharged. No further analysis of the collective bargaining agreement will be necessary. Then, Plaintiff must show that [the client] in some way interfered with Plaintiff's business

relationship with [the employer], thus making pretextual the other reasons for Plaintiff's discharge. [*Id*. at 770.[8]]

The court also found that the purpose of § 301 preemption was not implicated when the state claim was against a third party rather than the employer: "[A]llowing a state law action to proceed against a party who has not signed the labor contract, and whose obligations are not defined by the contract, will neither define nor modify the contractual relationship between the employer and the union." *Id*. at 771. The court also noted that "it would not further the policies of either the Congress in enacting the federal labor statutes, or the Supreme Court in *Lueck,* to give a third party who has allegedly interfered with a labor contract what effectively amounts to immunity," which would be the result "if the court found the claim preempted by Section 301, and also found that Plaintiff could not bring a claim of this type under Section 301." *Id*. (quotation marks and citation omitted).

We find *Dougherty* persuasive and applicable to the case at hand. We fail to see how any elements of plaintiff's tortious-interference claim will require interpretation of the UAW-Aramark CBA. GM emphasizes that plaintiff's business relationship with Aramak is a controlled by that agreement. However, even assuming that to be true, the fact that plaintiff's business relationship arises from the CBA does not establish that interpretation of that contract is required. Cf. *Lingle*, 486 US at 411 ("[T]here is nothing novel about recognizing that substantive rights in the labor relations context can exist without interpreting collective-bargaining agreements."). Indeed, we have held that a tortious interference claim may be based on an at-will employment contract. *Feaheny v Caldwell*, 175 Mich App 291, 304; 437 NW2d 358 (1989). It follows that a union protected position confers a sufficient business relationship for purposes of a tortious-interference claim, and no interpretation of the collective bargaining agreement is necessary to make that narrow point. In sum, the meaning of the UAW-Aramark CBA is simply not relevant to plaintiff's dispute with GM, a nonparty to the contract. Instead, plaintiff's claim turns on whether GM intentionally and wrongfully interfered with plaintiff's business relationship.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Douglas B. Shapiro
/s/ Kathleen Jansen
/s/ Michael J. Kelly

---

[8] In concluding that the plaintiff's tort claim would not require interpretation of the collective bargaining agreement, *Lingle* also relied on the fact that the plaintiff's grievance had been resolved. We are not convinced that the status of plaintiff's grievance has any bearing on whether the claim requires contract interpretation. In any event, in this case a settlement had been reached between plaintiff's union and Aramak over the grievance.